IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| T.T., by and through his guardian ad litem SUSAN T., <br><br> Plaintiff, <br><br> v. <br><br> COUNTY OF MARIN, <br><br> Defendant. | No. C 12-02349 WHA <br><br><br> **ORDER GRANTING IN PART AND DENYING IN PART ANTI-SLAPP MOTION TO STRIKE AND AWARDING ATTORNEY'S FEES** |
| COUNTY OF MARIN, <br><br> Counterclaimant, <br><br> v. <br><br> T.T., by and through his guardian ad litem SUSAN T.; SUSAN TIMMEL; JESSICA WELCH; COLLEEN A. SNYDER; CHRISTIAN M. KNOX; F. RICHARD RUDERMAN; PAULA SOLOMON and RUDERMAN & KNOX, LLP, <br><br> Counterclaim Defendants. | |

**INTRODUCTION**

In this action to enforce an administrative judgment in favor of a special-needs student, plaintiff moves to strike defendant's counterclaims for fraud, false claims, and breach of contract. For the reasons explained below, the motion is **GRANTED IN PART** and **DENIED IN PART**.

**STATEMENT**

Plaintiff T.T. is a special-needs student who filed a Individuals with Disabilities Education Act "due process" complaint against the Novato Unified School District and defendant County of Marin before the Office of Administrative Hearings for the State of California in August of 2011. The due process complaint alleged that Novato and the County had failed to provide T.T. an appropriate education given his disability. Plaintiff settled the complaint with Novato, but not the County, in November of 2011.

The settlement agreement between plaintiff and Novato provided that Novato would reimburse plaintiff $82,000 for educational costs for the 2011-2012 and 2012-2013 school years. The settlement agreement defined the parties as "Jessica Welch . . . individually and on behalf of her son" T.T., and Novato; the County is not explicitly named in the settlement agreement. The settlement agreement also released "all claims" related to the dispute between the parties, including Novato's "past and present officials, employees, trustees, successors, predecessors, assigns, agents, attorneys, consultants, affiliates and representatives" (Dkt. No. 60-1 at 3–4). Following settlement, Novato was dismissed from the due process action.

Plaintiff subsequently pursued his due process claim against the County before the OAH. The due process complaint before the OAH sought, *inter alia*, declaratory and compensatory relief for the County's alleged failure to provide appropriate education for the 2009–2010 through 2010–2011 school years (Dkt. No. 73-2 at 10).

Outside of the OAH proceedings, the County contended that OAH did not have subject-matter jurisdiction in the matter due to a line-item veto by the governor of the relevant statute in October 2010, a state court decision in March 2011 (not involving plaintiff), and a July 2011 memorandum of understanding with Novato. The County also contended that OAH did not have personal jurisdiction over the county because it had not been properly served with the complaint. The County did not, however, assert these contentions in front of OAH. The County refused to participate in the OAH proceeding in any way, refusing, for example, to make a special appearance to contest jurisdiction. OAH was apparently apprised of the County's arguments by plaintiff, who submitted letters from defendant's counsel to the ALJ. During the OAH hearing,

the ALJ arranged for the County to be contacted via telephone; the County confirmed during that phone call that it did not intend to appear at the hearing.

OAH held that it had subject-matter and personal jurisdiction over the absent defendant and awarded plaintiff $41,000 as compensation for, *inter alia*, the County's failure to provide appropriate education *prior to its responsibilities being extinguished by the line-item veto*. OAH also held that there was no risk of a double recovery because the OAH judgment and the settlement with Novato covered different educational expenses. The County did not appeal the OAH judgment.

In February 2012, plaintiff's counsel sent the County a demand letter seeking to enforce the judgment and requesting prevailing party attorney's fees. Following expiration of the County's window to appeal the OAH decision, plaintiff filed suit in this district to enforce the OAH judgment under 20 U.S.C. 1415(i)(3) . In September (as amended in November), the County filed counterclaims for fraud, for filing a false claim under the California False Claims Act, and for breach of contract.

With respect to the latter, the County contends that it was an intended third-party beneficiary of the settlement with Novato, and that the OAH suit therefore breached the claims release. The County asserts this breach-of-contract claim against plaintiff, plaintiff's mother, and plaintiff's grandmother.

The County also contends that the counterclaim defendants made false statements during the OAH hearing, and that these statements constitute fraud. The County asserts this claim for fraud against plaintiff, plaintiff's mother and grandmother, plaintiff's counsel and their law firm, and plaintiff's expert witness in the OAH proceeding.

The County further contends that because of the allegedly false statements during the OAH proceeding, the letter demanding reimbursement based on the OAH judgment "was based upon false information" (Amd. Counterclaim ¶ 40) and therefore constitutes a false claim under the CFCA. There is no contention that plaintiff's counsel misrepresented the OAH judgment itself or the amount of attorney's fees due in the demand letter. The County asserts the CFCA claim against plaintiff, the mother and grandmother, and plaintiff's counsel and their law firm.

3

1    The County further contends that the instant action is part of plaintiff's "continued
2 attempt to defraud the County of Marin with . . . false claims" (*id*. ¶ 41). This allegation is
3 incorporated by reference into the County's counterclaim for fraud, but is not incorporated into
4 the CFCA claim. (*id*. ¶¶ 41, 43, 58).

5    Plaintiff moves to dismiss the counterclaims and moves to strike the counterclaims under
6 California's Anti-SLAPP statute, and requests attorney's fees and costs. Following full briefing
7 and oral argument, plaintiff's motion as to the counterclaim for breach of contract is **DENIED**,
8 and plaintiff's motions as to the fraud and CFCA counterclaims is **GRANTED**. Plaintiff's request
9 for attorney's fees and costs with respect to the fraud and CFCA counterclaims is **GRANTED**.

10    At oral argument, the County reiterated that the OAH proceeding did not have
11 jurisdiction over the County. The County does not, however, request any relief on this basis at
12 present and the parties have not briefed the issue. This dispute remains to be addressed, if at all,
13 another day.

**ANALYSIS**

15    A "strategic lawsuit against public participation" — otherwise known as a "SLAPP suit"
16 — is a "meritless suit filed primarily to chill the defendant's exercise of First Amendment
17 rights." *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman*, 47 Cal. App. 4th 777, 783 (1996).
18 California Code of Civil Procedure Section 425.16(b)(1) — the "anti-SLAPP" statute — allows
19 defendants to strike any cause of action "arising from any act of that person in furtherance of the
20 person's right of petition or free speech under the United States Constitution or the California
21 Constitution in connection with a public issue." Section 425.16(e)(1) defines "act in furtherance
22 of a person's right to petition or free speech" as "any written or oral statement made before a
23 legislative, executive, or judicial proceeding, or any other official proceeding authorized by
24 law."

25    The analysis under the anti-SLAPP statute is two-pronged. *First*, the party moving to
26 strike must make a threshold showing that the challenged claim was one arising from "protected
27 activity." *Second*, if the moving party is able to do so, the burden shifts to opposing party to
28

4

make a prima facie showing of facts that would support a judgment in their favor if proved at trial. *Vargas v. City of Salinas*, 46 Cal. 4th 1, 14 (2009).

"Special procedural rules apply where an anti-SLAPP motion is brought in federal court." *Bulletin Displays, LLC v. Regency Outdoor Adver., Inc.*, 448 F. Supp. 2d 1172, 1180 (C.D. Cal. 2006) (Judge Cormac Carney). This is because the anti-SLAPP burden-shifting analysis must comply with the Federal Rules:

> § 425.16 applies in federal court. However, it cannot be used in a manner that conflicts with the Federal Rules. This results in the following outcome: If a defendant makes a special motion to strike based on alleged deficiencies in the plaintiff's complaint, the motion must be treated in the same manner as a motion under Rule 12(b)(6) except that the attorney's fee provision of § 425.16(c) applies. If a defendant makes a special motion to strike based on the plaintiff's alleged failure of proof, the motion must be treated in the same manner as a motion under Rule 56 except that again the attorney's fees provision of § 425.16(c) applies.

*Carr v. Asset Acceptance, LLC*, No. 11-890, 2011 WL 3568338 *3 (E.D. Cal. Aug.12, 2011) (Judge Lawrence O'Neill) (quoting *Rogers v. Home Shopping Network, Inc.*, 57 F. Supp. 2d 973, 983 (C.D. Cal. 1999) (Judge Dean Pregerson). "If a defendant makes an anti-SLAPP motion based on the plaintiff's failure to submit evidence to substantiate its claims, the motion is treated as a motion for summary judgment, and discovery must be developed sufficiently to permit summary judgment under Rule 56. *Bautista v. Hunt & Henriques*, No. 11-4010, 2012 WL 160252, at *3–4 (N.D. Cal. Jan. 17, 2012) (Magistrate Judge Joseph Spero) (citing *Bulletin Displays*, 448 F. Supp. 2d at 1180, and *In re Bah*, 321 B.R. 41, 45 n.6 (9th Cir. 2005)).

Although the parties have submitted evidentiary materials their opposition and reply papers, plaintiff's motion to strike focuses on the sufficiency of the pleadings. Thus, this order construes plaintiff's motion to strike as a motion under Rule 12(b)(6). This order now turns to the two prongs of analysis.

**1. THE CHALLENGED CLAIMS ARISE FROM PROTECTED ACTIVITY**

Plaintiff first has the burden of showing that the County's counterclaims for relief arise out of activity protected by Section 425.16. In the anti-SLAPP context, the critical point is whether the County's counterclaims for relief are based on an act in furtherance of plaintiff's

5

right of free speech. *City of Cotati v. Cashman*, 29 Cal. 4th 69, 78 (2002). Acts in furtherance of a person's right of petition or free speech include:

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law;
>
> (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law;

Cal. Civ. Proc. Code § 425.16(e). A claim for relief arising from a party's litigation activity may appropriately be the subject of a Section 425.16 motion to strike. *Church of Scientology v. Wollersheim*, 42 Cal. App. 4th 628, 648 (1996). Acts in furtherance of free speech or the right of petition further include "communicative conduct such as the filing, funding, and prosecution of a civil action." *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1056 (2005) (holding that a creditor's actions taken in collecting a judgment constituted communicative conduct in furtherance of the right of petition).

This order holds that all three of the County's counterclaims are based on acts in furtherance of plaintiff's right of free speech. The breach-of-contact counterclaim arises out of plaintiff's act of prosecuting his due process complaint against the County (Amd. Counterclaim ¶ 56). The fraud counterclaim arises out of plaintiff's representations during the OAH action (*id*. ¶¶ 60–61). The CFCA counterclaim arises out of plaintiff's demand letter requesting reimbursement under the OAH judgment and prevailing party attorney's fees (*id*. ¶ 45). These acts are indisputably part of plaintiff's litigation activity.

The County contends that plaintiff's actions are not protected because the counterclaims are based on illegal activity. This contention is devoid of merit. The County does not point to any allegedly illegal activity other than plaintiff's actions in connection with prosecuting its claim. Instead, the County makes a circular and conclusory allegation that its "claims for fraud, false claims act violations and breach of contract, are based on [plaintiff's] illegal fraudulent conduct to obtain monies from the County" (Opp. 9).

6

1  The County's contentions that that the due process complaint was pursued despite an
2 alleged lack of subject-matter jurisdiction and despite the release in the settlement agreement are
3 irrelevant to defining the underlying activity.

**2. THE COUNTY'S ABILITY TO PREVAIL ON ITS CLAIMS**

On the second prong of the anti-SLAPP analysis,

> [o]nce it is determined that an act in furtherance of protected expression is being challenged, the plaintiff must show a reasonable probability of prevailing in its claims for those claims to survive dismissal. To do this, the plaintiff must demonstrate that the complaint is legally sufficient and supported by a *prima facie* showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited. This burden is much like that used in determining a motion for nonsuit or directed verdict, which mandates dismissal when no reasonable jury could find for the plaintiff. Thus, a defendant's anti-SLAPP motion should be granted when a plaintiff presents an insufficient legal basis for the claims or when no evidence of sufficient substantiality exists to support a judgment for the plaintiff.

*Metabolife Intern., Inc. v. Wornick*, 264 F. 3d 832, 840 (9th Cir. 2001) (quotation marks omitted). This rule will now be applied to the record on this motion.

**A. The County's Counterclaims Are Not Precluded**

Plaintiff contends that the County cannot prevail on any of its three counterclaims because these claims are precluded. Plaintiff asserts that defendant's counterclaims are precluded because County has waived them or is estopped from asserting them because it failed to appear at the OAH proceeding or appeal that decision. "California . . . accords collateral estoppel effect to default judgments, at least where the judgment contains an express finding on the allegations." *Murray v. Alaska Airlines, Inc.*, 522 F.3d 920, 924 (9th Cir. 2008). One of the threshold requirements for collateral estoppel under California law, however, is that "the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding." *Lucido v. Superior Court*, 51 Cal. 3d 335, 341 (1990).

This order therefore finds that the County is not precluded from asserting its three counterclaims in this action, at least on this record. Plaintiff asserts in conclusory fashion that "[e]ach of the County's three claims require the Court to unseat the findings by the OAH" (Dkt. No. 72 at 7). Plaintiff does not establish — on a claim by claim basis — that the issues sought to

7

be precluded are identical to issues decided at the OAH proceeding. For example, plaintiff does not establish that the OAH proceeding resolved the questions of whether the County is a third-party beneficiary to the settlement agreement, nor whether plaintiff made representations to the OAH in furtherance of an organized fraud. Moreover, the County's counterclaim under the CFCA for submission of the post-judgment demand letter is necessarily outside the scope of the issues decided at the OAH proceeding, and thus cannot be precluded.

### B. The County's Breach-of-Contract Counterclaim

Turning to the proceedings in this action, Plaintiff contends that County was neither a third-party beneficiary of the settlement agreement with Novato, nor was intended to be a third-party beneficiary by the parties. This contention goes to the merits of the County's breach-of-contract claim. Being outside the pleadings, this contention would more properly be raised on a motion for summary judgment and this order declines to rule on the issue at the Rule 12(b)(6) stage.

Plaintiff asserts that the County's breach-of-contract counterclaim is barred by the litigation privilege. This order disagrees. Determining the scope of the litigation privilege is similar to the anti-SLAPP analysis above regarding whether the target of a claim arises out of a protected activity. California Civil Code § 47(b), provides that:

> A privileged publication or broadcast is one made in any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law.

Regarding a claim for breach of contract:

> [W]hether the litigation privilege applies . . . turns on whether its application furthers the policies underlying the privilege. . . . [T]he purpose of the litigation privilege is to ensure free access to the courts, promote complete and truthful testimony, encourage zealous advocacy, give finality to judgments, and avoid unending litigation.

*Wentland v. Wass*, 126 Cal. App. 4th 1484, 1492 (2005). Where the communication at issue is a separate promise independent of the litigation, however, the litigation privilege may not apply. *See id.* at 1495.

8

The County seeks to enforce a separate promise independent of the litigation: a release provision. After weighing the public policy interests, this order concludes that the litigation privilege should not apply here because otherwise any effort to enforce an otherwise valid litigation release could be hamstrung by invocation of the litigation privilege.

Based on the pleadings, this order also holds that the County has pled a barely-plausible counterclaim for breach of contract. The elements of a breach of contract claim are: (1) existence of the contract, (2) performance by the plaintiff or excuse for nonperformance, (3) breach by the defendant, and (4) damages. *Tom Trading, Inc. v. Better Blue, Inc.*, 26 Fed. Appx. 733, 735 (9th Cir. 2002). The counterclaim alleges the existence of a contract between plaintiff and Novato to which the County is allegedly a third-party beneficiary (Amd. Counterclaim. ¶ 52). This allegation is supported by other facts alleged in the complaint: the settlement agreement released claims against Novato's agents, representatives, and consultants, and by virtue of a memorandum of understanding with Novato, County was such an agent, representative, and consultant for these purposes (*id*. ¶¶ 26–27). The counterclaim asserts that plaintiff breached by continuing its suit against the County following the agreement (*id.* ¶ 56). The counterclaim also alleges damages from the claim for reimbursement (*id*. ¶ 67).

These allegations are sufficient at the pleading stage. Accordingly, the County has established an ability to prevail on its counterclaim for the purposes of Rule 12(b)(6) and plaintiff's anti-SLAPP motion is **DENIED** as to this claim. This should not, however, be taken as a ruling that the County's counterclaim is likely to survive a motion for summary judgment.

### C. The County's Fraud Counterclaim

The County's counterclaim for fraud is a different story. This counterclaim does not follow the more common path of seeking to set aside a prior judgment on the grounds that it was procured by fraud. Rather, the County seeks to recover money in tort from the speakers themselves based entirely on representations made during the OAH proceedings (Amd. Counterclaim ¶¶ 60–61). These representations fall squarely within the realm of communications protected by the litigation privilege. Accordingly, this order holds that the County cannot establish a probability that it will prevail on this counterclaim.

9

To the extent that the fraud counterclaim could be interpreted to apply to statements made to enforce the OAH judgment, the California Supreme Court has explicitly held that the litigation privilege applies to actions taken in collecting a judgment. *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1058 (2005). Extending the litigation privilege to post-judgment activities is consistent with the litigation privilege's policy of giving litigants and witnesses free access to the courts and promoting finality in judgments. *Id*. at 1063.

The County attempts at length to substantiate the elements of its fraud claim but does not address the application of the litigation privilege. Moreover, even if the County had attempted to salvage this counterclaim, the counterclaim complaint plainly fails to plead the fraud counterclaim with particularity under Federal Rule 9(b). For example, although the County lists a series of sixteen allegedly fraudulent misrepresentations (the vast majority of which are actually legal contentions), the County fails to identify which of the eight fraud counterclaim defendants made which representation.

The motion to strike the fraud counterclaim is **GRANTED**.

### D.   The County's CFCA Counterclaim

The parties dispute whether the litigation privilege applies to the County's CFCA counterclaim given the factual circumstances of this dispute. It is not necessary to resolve this issue because there is a more fundamental problem with this counterclaim.

Under Section 12651(a)(1) of the CFCA, liability falls on any person who "knowingly presents or causes to be presented a false or fraudulent claim for payment or approval." Here, plaintiff's attorneys clearly submitted a "claim" to the County in the form of the demand letter requesting payment under the OAH judgment and attorney's fees. The problem is that there is no contention that the claim itself was "false." The County does not allege that the demand letter misstated the OAH judgment or the amount of attorney's fees due. Construing the awkwardly-written pleading favorably to the County, the counterclaim alleges that the demand letter was based on a "false record." In other words, the County is asserting that plaintiff made false statements at the OAH proceeding, and that the OAH judgment that plaintiff seeks to enforce is "based on" false information.

10

The County does not cite any authority that interprets the CFCA to apply to an *accurate* claim to enforce a judgment where the recipient disagrees with an underlying factual finding. Indeed, it would be bizarre if the government could collaterally attack any attempt to enforce a judgment — with the threat of treble damages — because it alleged that the prevailing party made a false factual statement at the earlier proceeding. This is especially true where, as here, the County defaulted on the earlier proceeding by failing to appear.

The County has failed to plead a plausible claim under the CFCA. Plaintiff's motion to strike is **GRANTED**.

## CONCLUSION

Plaintiff's anti-SLAPP motion to strike as to the County's counterclaims under the CFCA and for fraud is **GRANTED**. Plaintiff's motion to strike as to the County's counterclaim for breach of contract is **DENIED**. Plaintiff is awarded attorney's fees pursuant to California Civil Procedure Code Section 427.16(c). Plaintiff may only recover for attorney's fees and costs incurred in defending against the County's CFCA and fraud counterclaims. The parties must follow the procedure set out in the accompanying order.

Because it was unnecessary to rely on the lodged materials to reach the conclusions above, plaintiff's request for judicial notice **DENIED AS MOOT**

**IT IS SO ORDERED.**

Dated: January 25, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

11